# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
February 12, 2020

Lyle W. Cayce
Clerk

No. 19-30396

LOUISIANA OIL & GAS INTERESTS, L.L.C.,

      Plaintiff - Appellant

v.

SHELL TRADING U.S. COMPANY; GULFPORT ENERGY CORPORATION,

      Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before DAVIS, SMITH, and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this diversity case, Plaintiff, Louisiana Oil & Gas Interests, L.L.C. ("LOGI"), appeals the district court's Rule 12(b)(6) dismissal of its complaint for failure to state a claim. The magistrate judge and district court determined that Plaintiff did not provide Defendants, Shell Trading U.S. Company ("Shell") and Gulfport Energy Corporation ("Gulfport"), with notice under Article 137 of the Louisiana Mineral Code of their alleged failure to pay royalties timely and properly and that Plaintiff consequently was barred from recovering under Article 138. For the reasons set forth below, we AFFIRM.

No. 19-30396

## I. Background

In its complaint, Plaintiff alleged that on December 23, 2013, it acquired a 20.6% undivided interest in a mineral lease by way of a transfer and assignment from Thomas Barr IV Louisiana Properties-General, Limited Liability Company ("Properties-General").   Thomas Barr, IV, is the sole member and manager of both Plaintiff and Properties-General.   Plaintiff further alleged that on January 17, 2014, it sent a letter to Shell informing Shell of the change in ownership and requesting Shell to remit all royalty payments in the name of Plaintiff instead of Properties-General.  A copy of the transfer and assignment agreement between Plaintiff and Properties-General was enclosed.  In response, Shell stated that before it could implement such a change, Plaintiff needed to submit a copy of the recorded transfer and assignment agreement.

Plaintiff did not forward a copy of the recorded agreement to Shell at that time.   During the next year, Shell continued to remit royalty checks payable to Properties-General, and Plaintiff never wrote to Shell complaining that the payee on the checks was incorrect.  According to Plaintiff, its bank allowed Plaintiff to deposit the royalty checks in its account "as an accommodation," even though the checks were made payable to Properties-General.

Sometime in late February or early March 2015, however, Plaintiff changed banks and was no longer able to deposit the checks for collection because they were not made payable to Plaintiff.  Plaintiff (through Barr) telephoned Shell, requesting that Shell implement the change in payee as Plaintiff had requested over a year earlier.  On March 10, 2015, Shell emailed Plaintiff, reiterating that Shell required a copy of the recorded transfer and assignment agreement in order to make a change in the payee.  On April 21, 2015, Plaintiff faxed Shell a copy of the recorded transfer and assignment

2

No. 19-30396

agreement.  Two days later, on April 23, 2015, Plaintiff wrote a letter to Shell, enclosing two checks it had received in March and April 2015 made payable to Properties-General and was unable to deposit.  Plaintiff requested reissuance of the checks in its name.  The letter provided:

> Enclosed please find the following checks returned to Shell Trading for reissuance in the new name Louisiana Oil & Gas Interests, LLC, as is evidenced by the Transfer and Assignment faxed to you.
>
> 0000289629  3/19/2015  $54,410.35  Owner#420540  Citibank
> 0000295338  4/19/2015  $45,345.48  Owner#420540  Citibank
>
> Thank you for your assistance in the re-issuance of these checks as soon as possible.
>
> Sincerely,
>
> Thomas Barr, IV

Plaintiff contended that Shell did not issue a replacement check for the above checks in the total amount of $99,755.83 "until on or after June 1, 2015," which was more than thirty days after April 21, 2015, the date Shell acknowledged receipt of the recorded assignment.

On September 1, 2015, Plaintiff sent a letter to Shell in which it "made demand" for the payment of damages, attorney's fees, and interest for Shell's failure to pay royalty payments timely and properly under Article 140 of the Louisiana Mineral Code.  On September 25, 2015, Shell denied any liability and contended that it timely and properly rendered all royalty checks due.

On March 2, 2018, Plaintiff filed the instant complaint in federal district court asserting claims against Defendants, Shell and Gulfport,[1] under the

---

[1] Gulfport states that it is a mineral lessee, along with Shell, "of the property subject to the Barr Property Interest."

3

No. 19-30396

Louisiana Mineral Code for failure to pay royalty payments.[2]    Plaintiff contended that Defendants had thirty days after receipt of its payee change request on January 24, 2014, to pay royalties due.  Plaintiff further contended that it should have received the April 2015 royalty payment by May 20, 2015, but that it did not receive that payment until June 2, 2015.[3]  Plaintiff asserted that, under Articles 139 and 140 of the Louisiana Mineral Code, it was entitled to $270,612.62, which is twice the amount of the February, March, and April 2015 royalty payments, plus reasonable attorney's fees and costs.

In response, Shell and Gulfport filed motions to dismiss for failure to state a claim under Rule 12(b)(6).  Shell contended that Plaintiff failed to state a claim under the Louisiana Mineral Code because (1) Shell timely paid all royalties to the lessor of record according to the recorded ownership documents Barr provided, and (2) neither Plaintiff, nor its managing member Barr, gave Shell the statutorily-required notice under Article 137 of any failure to make timely and proper payment of royalties.

Shell asserted that, as a matter of law, Plaintiff's January 2014 correspondence informing Shell of an ownership change was insufficient notice under Article 137 because the letter made no indication of a failure on the part of Shell to make royalty payments.  Shell further argued that the April 2015 correspondence requesting reissuance of the checks dated March and April 2015 acknowledged that Shell had already paid royalties due and, thus, was also insufficient notice, as a matter of law, because the correspondence gave no indication of Shell's failure to pay royalties.  Gulfport argued in its Rule 12(b)(6) motion that none of the alleged notices were sent to Gulfport, but only to Shell; therefore, it received no notice as required by Article 137.  Gulfport

---

[2] Although none of Plaintiff's communications were with Gulfport, Plaintiff alleges that Shell paid royalty payments "on Gulfport's behalf."

[3] The April 2015 royalty payment was made payable to Plaintiff.

4

No. 19-30396

alternatively asserted the same arguments as Shell, i.e., that none of Plaintiff's written correspondence satisfied Article 137's notice requirement.

The magistrate judge issued a report, recommending that the district court grant Defendants' Rule 12(b)(6) motions to dismiss. The magistrate judge determined that Plaintiff's January 2014 letter did not inform Shell of any past failure to pay royalty payments and, thus, was insufficient as a matter of law to satisfy Article 137. The magistrate judge also concluded that Plaintiff's April 2015 request for reissuance of checks did not satisfy Article 137's notice requirement because the request did not notify Shell "of any past due royalty payments." Furthermore, the magistrate judge determined that notifying Shell of a new payee and requesting reissuance of checks in the new payee's name did "not give rise to a reasonable inference that any deficiency in payment ha[d] occurred."

The magistrate judge held that because Plaintiff did not provide either Defendant with the statutorily-required notice, then Plaintiff was barred from recovering under the Louisiana Mineral Code. The magistrate judge recommended that Plaintiff's complaint be dismissed for failure to state a claim under Rule 12(b)(6). Over Plaintiff's objections, the district court adopted the magistrate judge's report and dismissed the action for failure to state a claim. Plaintiff timely appealed.

## II. Applicable Law

This Court reviews a district court's Rule 12(b)(6) dismissal for failure to state a claim de novo.[4] To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5] "A claim has facial plausibility

---

[4] *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

Because this case arises under the court's diversity jurisdiction, the *Erie* doctrine requires application of the applicable state substantive law, here Louisiana law.[7]  The Louisiana Mineral Code provides a mineral lessor with certain "relief for the failure of his lessee to make timely or proper payment of royalties."[8]  Article 137 requires the mineral lessor, however, to "give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease."[9]

As stated by Louisiana appellate courts, notice under Article 137 is not a "demand for performance," but "is merely to inform the lessee he has not paid royalties deemed by the lessor to be due."[10]  Although the Mineral Code does not give specific guidelines as to the precise requirements of Article 137 notice, "it seems apparent the intent of the Mineral Code is that the notice be of a more specific nature so as to reasonably alert the lessee and to allow for an appropriate investigation of the problem by the lessee."[11]  Whether notice is adequate under Article 137 "is determined on a case-by-case basis giving due consideration to the particular facts of each case."[12]

Article 138 allows the mineral lessee "thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment."[13]  If the lessee pays the royalties due in response to the required notice, then dissolution of the lease is

---

[6] *Id.*

[7] *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[8] *See* LA. STAT. ANN. §§ 31:137–41 (2019).

[9] *Id.* § 137.

[10] *Rivers v. Sun Expl. & Prod. Co.*, 559 So. 2d 963, 968–69 (La. App. 2d Cir. 1990).

[11] *Id.*

[12] *Id.*

[13] LA. STAT. ANN. § 31:138 (2019).

No. 19-30396

unavailable unless the original failure to pay was fraudulent.[14]  The lessor may be entitled to damages double the amount of royalties due, interest on that sum from date due, and reasonable attorney's fees if the original failure to pay was either fraudulent or willful and without reasonable grounds.[15]  If the original failure to pay was due to mere oversight or neglect, then the lessor's remedies are limited to interest and a reasonable attorney's fee "if such interest is not paid within thirty days of written demand therefor."[16]

### III.  Discussion

Plaintiff asserts that its communications with Shell satisfied the notice required under Article 137 in order to be entitled to damages under the Mineral Code.  Specifically, Plaintiff contends that the January 2014 letter it sent to Shell informing Shell of Plaintiff's new ownership of the lease interest and requesting Shell to remit royalty payments in Plaintiff's name satisfied Article 137.  Plaintiff further argues that its communications with Shell in April 2015 in which it sent a copy of the recorded transfer and assignment agreement and returned two royalty checks also satisfied Article 137.

In *Ross v. Enervest Operating, L.L.C.,* the Louisiana appellate court analyzed a letter almost identical to Plaintiff's January 2014 letter.[17]  Specifically, mineral lessors sent a letter to the lessee "introducing themselves as purchasers of [the] property" and requested "that any royalties formerly sent to the [prior owners] be sent to them."[18]  The letter did not indicate "that

---

[14] *Id.* § 139.
[15] *Id.*
[16] *Id.*
[17] 48,229, p.31 (La. App. 2 Cir. 6/26/13); 119 So. 3d 943, 960.
[18] *Id.*

any royalties were past due."[19]  The court held that the letter did not satisfy the requirements of Article 137.[20]

Like the letter in *Ross*, Plaintiff's January 2014 letter informed Shell that Plaintiff had become the new owner of the lease interest by way of transfer and assignment and requested that all future royalty payments be made out to Plaintiff as the new payee.  The letter also did not state that any royalty payments were past due.  Under *Ross*, Plaintiff's January 2014 letter does not satisfy the requirements of Article 137.  We hold that the magistrate judge and district court did not err in determining that Plaintiff's January 2014 communication was insufficient under Article 137.

Plaintiff's second written communication, sent over a year later in April 2015, also did not satisfy the requirements of Article 137.  As noted above, "[t]he adequacy of the notice [under Article 137] is determined on a case-by-case basis giving due consideration to the particular facts of each case."[21] Plaintiff's second letter did not complain that Shell had failed to make royalty payments or that "improper" payments had been made.  The letter enclosed two checks and requested that the checks be reissued in the name of Plaintiff. The letter further stated that a copy of the transfer and assignment agreement indicating Plaintiff's ownership of the lease interest had been faxed to Shell. This second letter made the same request as Plaintiff's first letter sent in January 2014—that royalty payments be made out to Plaintiff.  Plaintiff requested reissuance of the two enclosed checks "as soon as possible."  We agree with the magistrate judge and district court that the second letter "d[id] not give rise to a reasonable inference that any deficiency in payment ha[d]

---

[19] *Id.*

[20] *Id.*

[21] *Rivers*, 559 So. 2d at 969.

occurred." Therefore, Plaintiff's second communication also did not satisfy the requirements of Article 137.

Plaintiff asserts that after its January 2014 correspondence, Shell knew it was not properly paying royalty payments because it was aware that Plaintiff was the owner of the lease interest and that payments, thus, should have been made payable to Plaintiff. Plaintiff's arguments, however, reflect its misunderstanding of the notice required by Article 137.[22] Article 137 requires the lessor to "give his lessee written notice" of "the failure of his lessee to make timely or proper payment of royalties."[23]

As reflected above, the written communications Plaintiff sent to Shell did not contend that any improper payments had been made. The first communication in January 2014 requested that prospective payments be made to Plaintiff as the new owner of the lease interest. The second written communication made the same request and further requested that two checks sent to Plaintiff in February and March 2015 be reissued. As described by Plaintiff in its complaint, the April 2015 letter "was yet another written request by Plaintiff for a change in the Payee of the royalties." Neither the January 2014 nor April 2015 letter notified Shell, as required by Article 137, that it failed to make payment timely or properly.

Although an argument can be made that the April 2015 letter requesting reissuance of the checks was, in effect, notice that Shell had "improperly" made

---

[22] Plaintiff also wrongly contends that the magistrate judge and district court made a "finding" that Plaintiff was "required" to furnish Shell with a copy of the recorded transfer and assignment agreement. Review of the magistrate judge's report and district court's order adopting the report shows no such finding was made. Plaintiff's complaint was dismissed because Plaintiff failed to provide Shell with notice, as required by Article 137, of a failure to make timely or proper payment of royalties. The dismissal was not dependent on any finding or determination that Plaintiff was required to furnish Shell with a copy of the recorded transfer and assignment agreement.

[23] LA. STAT. ANN. § 31:137 (2019).

payment, the adequacy of Article 137 notice is made on a case-by-case basis. Based on the language of the April 2015 letter, it is reasonable, as a matter of law, to construe the April 2015 letter as another request that prospective payments be made out to Plaintiff, and not as notice of a failure to make proper payments.[24]

## III. CONCLUSION

Based on the foregoing, the district court did not err in dismissing Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim. Accordingly, the district court's judgment is AFFIRMED.

---

[24] Under Louisiana law, which we apply sitting as an *Erie* court, the adequacy of written notice under Article 137 is determined by the court as a matter of law. *See, e.g., Ross*, 48,229 at p. 31; 119 So. 3d at 960 (reviewing specific language of letter and determining that letter "contain[ed] no demand for royalties which would satisfy the requirements of [Article 137]."); *Rivers*, 559 So. 2d at 989 (examining specific language of letter and determining that "lessees could have reasonably concluded that the letter was intended . . . not [as] notice of any deficiency or failure to pay for production.").